UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,<br><br>　　　　　　　Plaintiff,<br>vs.<br><br>COOLIDGE 135, LLC, a Nevada limited liability company; JULI KOENTOPP; and BRADLEY C. SHULTIS,<br><br>　　　　　　　Defendants. | Case No.: 2:12-cv-01680-GMN-VCF<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss (ECF No. 9) filed by Defendants Coolidge 135, LLC ("Coolidge 135"), Juli Koentopp, and Bradley C. Shultis (collectively, "Defendants"). Plaintiff Branch Banking and Trust Company filed a Response (ECF No. 13), and Defendants filed a Reply (ECF No. 18).

**I.　BACKGROUND**

Plaintiff's causes of action arise out of a series of loan transactions originating with a loan from Colonial Bank, N.A., to Defendant Coolidge 135, secured by commercial property in Arizona, and for which Defendants Koentopp and Shultis later served as Guarantors. (Compl., ECF No. 1.) Plaintiff alleges a claim for Deficiency against Defendant Coolidge 135 as Borrower, and a claim for Breach of Guarantees against Defendants Koentopp and Shultis as Guarantors ("Guarantor Defendants"). (*Id*.) Plaintiff also alleges a claim for Breach of the Covenant of Good Faith and Fair Dealing against all Defendants. (*Id*.)

In January 2008, Colonial Bank, N.A., was succeeded by Colonial Bank through its conversion from a national banking association to a state-chartered bank. (*Id.* at ¶ 16.) In

August 2009, Colonial Bank was closed by the State Banking Department of the State of Alabama, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver in order to liquidate and distribute the assets of Colonial Bank. (*Id*. at ¶ 19.)  The FDIC then assigned to Plaintiff "all of its right, title and interest in, to and under the loan documents evidencing, securing, Guaranteeing and otherwise related to the Note." (*Id*. at ¶ 20.)  This transaction was "for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and other good and valuable consideration received from or on behalf" of Plaintiff. (Assignment, Ex. 8 to Compl., ECF No. 1-8.)

Plaintiff alleges that Defendant Coolidge 135 failed to pay the outstanding principal balance due on the loan as of June 2010, and that the Guarantor Defendants also failed to pay the balance due after receipt of a written demand letter in August 2011. (Compl., ¶¶ 22–25.) Because of this default, Plaintiff commenced a judicial foreclosure action in Arizona on December 16, 2011, and default judgment was entered on April 27, 2012. (*Id.* at ¶¶ 26-27; Default J., Ex. 10 to Compl., ECF No. 1-10.)  Pursuant to the Arizona law, the Arizona court ordered a sheriff's sale of the property. (Compl. at ¶ 27.)  On July 19, 2012, the property was sold at a Sheriff's Sale to J & M Farms for the amount of $575,000. (Am. Sheriff's Cert. of Sale, Ex. 11 to Compl., ECF No. 1-11.)  Plaintiff alleges that, at the time the property sold, the amount of the indebtedness remaining unpaid was over $5 million. (Compl., ¶ 29.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l. v. Ariz. Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the

complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered [on a motion to dismiss]." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

1  movant, repeated failure to cure deficiencies by amendments previously allowed, undue
2  prejudice to the opposing party by virtue of allowance of the amendment, futility of the
3  amendment, etc." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally,
4  leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be
5  cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir.
6  1992).

## III. DISCUSSION

Defendants filed a motion to dismiss on December 3, 2012, alleging that Plaintiff failed to state the availability of a deficiency judgment. (Mot. to Dismiss, ECF No. 9.)  Moreover, Defendants argued that the Court should grant the motion to dismiss because Plaintiff failed to satisfy the pleading standards required to state a claim and survive a motion to dismiss. (*Id.*)

### A. Deficiency

Nevada statutes provide for deficiency judgment awards under certain circumstances where "there is a deficiency of the proceeds of the sale and a balance remaining due." Nev. Rev. Stat. § 40.455(1).  Specifically, the relevant statute provides:

> Except as otherwise provided in subsection 3, upon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively, and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively.

*Id*. Subsection 3 creates certain exceptions where "the judgment creditor or the beneficiary of the deed of trust is a financial institution." Nev. Rev. Stat. 40.455(3).

Section 459 provides limitations on the amount of a deficiency judgment award, prohibiting a court from rendering judgment for more than:

/ / /

    (a)   The amount by which the amount of the indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale;

    (b)   The amount which is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, with interest from the date of sale; or

    (c)   If the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs, whichever is the lesser amount.

Nev. Rev. Stat. § 40.459(1). Prior to June 10, 2011, subsection 459(1) did not include subpart (c); this subpart was added by the Nevada legislature through Assembly Bill 273. *Id*.

    Here, the parties' arguments focus on the applicability of subpart (c) to Plaintiff's claims. However, as discussed below, regardless of whether subpart (c) applies, Plaintiff's allegations are deficient and must be dismissed, but the Court will give leave to amend.

    To state a claim for a deficiency judgment award, Plaintiff must allege that it is "the judgment creditor or the beneficiary of the deed of trust," and that it applied for a deficiency judgment "within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively." *See* Nev. Rev. Stat. § 40.455(1). However, here, Plaintiff does not allege that it meets these criteria under the statute, and presents no argument as why a sheriff's sale conducted pursuant to Arizona law entitles Plaintiff to invoke the rights granted to judgment creditors pursuant to section 455(1). Therefore, on this basis alone, Plaintiff's cause of action for deficiency must be dismissed for failure to state a legally cognizable claim and the grounds upon which it rests.

    As for the issue of applicability of subpart (c), the Nevada Supreme Court recently issued an Advance Opinion clarifying the question, holding that "the limitations in NRS 40.459(1)(c) apply to sales, pursuant to either judicial foreclosures or trustee's sales, occurring

1  on or after the effective date of the statute," which is June 10, 2011. *See Sandpointe Apts., LLC*
2  *v. Eighth Jud. Dist. Ct.*, 129 Nev. Adv. Op. 87 (Nov. 14, 2013).  Therefore, here, if the date of
3  the Arizona sheriff's sale is the relevant sale date for this action, then subpart (c) would apply
4  as long as Plaintiff "acquired the right to obtain the judgment from a person who previously
5  held that right," which appears to be true based upon the facts alleged.

6       Finally, the Court notes that prior to a determination on the merits, Plaintiff must allege
7  facts sufficient for the Court to determine the appropriate calculations required by section
8  459(1), including: "the amount of the consideration paid for that right [to obtain the
9  judgment]," "the amount for which the property was actually sold," and the "fair market value
10 of the property sold at the time of the sale." *See* Nev. Rev. Stat. § 40.459(1)(c).  In its
11 Complaint, Plaintiff has alleged the amount for which the property was sold ($575,000), and
12 appears to have alleged the amount of consideration paid for the right to obtain the judgment
13 ($10 "and other good and valuable consideration").  Although this is likely sufficient to satisfy
14 the pleading standard for Rule 12(b)(6), Plaintiff must ultimately provide evidence of the value
15 of the "other good and valuable consideration" so that the Court may conclusively determine
16 the greater of the amounts described in subpart (c), as well as the lesser of the amounts
17 described in subparts (a), (b), and (c).  Nevertheless, here, the Court finds that "other good and
18 valuable consideration" may be reasonably construed in Plaintiff's favor as an allegation of
19 some greater amount that could potentially allow for a deficiency judgment.  Also, because an
20 independent purchaser, J & M Farms, actually paid $575,000 for the property, this amount may
21 be construed as an allegation supporting a determination of fair market value, pending the
22 Court's final determination of fair market value at any separate evidentiary hearing the Court
23 may hold pursuant to Nev. Rev. Stat. § 40.457(1).

24     **B.**    **Breach of Guarantees and of the Covenant of Good Faith and Fair Dealing**
25     The Court construes Plaintiff's cause of action for "Breach of Guarantees" as a cause of

action for breach of contract. To state a claim for breach of contract in Nevada, a plaintiff must allege: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement").

To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege that: (1) plaintiff and defendant were parties to an agreement; (2) defendant owed a duty of good faith to the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (per curiam). In Nevada, an implied covenant of good faith and fair dealing exists in every commercial contract, *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (per curiam). A plaintiff may assert a claim for its breach "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract," *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-923 (Nev. 1991). Where a claim for tortious breach of the covenant of good faith and fair dealing is alleged, as opposed to contractual breach of the covenant of good faith and fair dealing, a plaintiff must also allege the existence of a special relationship of reliance or fiduciary duty. *See A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 10 (Nev. 1989) (per curiam) (construing *Aluevich v. Harrah's*, 660 P.2d 986 (Nev. 1983)).

Here, although the Court finds that Plaintiff may be able to state a legally cognizable claims for breach of contract and breach of the covenant of good faith and fair dealing, the Court cannot find that Plaintiff done so here. Above all, the Court cannot find that Plaintiff has sufficiently stated these causes of action to the extent that Plaintiff relies on its claim for

deficiency in order to allege either types of breach.  Also, for its cause of action for breach of the covenant of good faith and fair dealing, Plaintiff must provide additional allegations as to the third element of unfaithfulness to the purpose of the contract; simply alleging default is not sufficient.  In pleading an unfaithful act, Plaintiff offers nothing more than the conclusory statement that Defendants "fail[ed] to comply with the terms and obligations of the Note and the Guarantees." (Compl., ¶ 42.)

Accordingly, Plaintiff's Complaint will be dismissed without prejudice, and the Court will grant leave to amend so that Plaintiff may cure the deficiencies identified above.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED without prejudice**.  Plaintiff shall have until **December 20, 2013**, to file an Amended Complaint.  **Failure to do so by this deadline will result in DISMISSAL** of the action **with prejudice**.

**DATED** this 5th day of December, 2013.

_____
Gloria M. Navarro
United States District Judge